### 225. MULKEY *v.* THE STATE.

1. The act of the General Assembly, approved August 15, 1903 (Acts 1903, p. 90), making criminal the obtaining of money or other thing of value, upon a fraudulent promise to perform services which the promisor does not then and there intend to perform, is not designed to create a remedy for the collection of debts nor for the compelling of the performance of contracts; but its sole legitimate purpose is to provide punishment for the promisor's fraudulent, deliberate, and successful intent to cheat and swindle the promisee; and in order that the crime may arise, the fraudulent intent must exist at the time the money or other thing of value is obtained.

2. While the act provides that "satisfactory proof of the contract, the pro-

curing thereon of money or other thing of value, the failure to perform
the services so contracted for, or failure to return the money so ad-
vanced with interest thereon at the time said labor was to be per-
formed, without good and sufficient cause and loss or damage to the
hirer, shall be deemed presumptive evidence of the intent referred to,"
still this, as well as every other provision of the act, must be con-
strued, and so restricted in its application, as not to result in effecting
what is substantially imprisonment for debt or non-performance of
contract. Notwithstanding the presumption authorized by this pro-
vision of the act, unless the evidence, as a whole, justifies the jury in
believing, beyond a reasonable doubt, that the fraudulent intention did
exist on the defendant's part at the time of obtaining the money or
other thing of value, the defendant should be acquitted.

3. Where the defendant, after obtaining money upon a promise to per-
form services, enters upon the performance of the services contracted
for, and engages therein for such a length of time as to make it wholly
unreasonable that he obtained the money with the intention not to
perform the services, he should not be convicted, although it appears,
from the evidence, that he has failed to perform a portion of the serv-
ices contracted for, and has failed to repay the money, that loss and
damage has resulted to the hirer, and that his excuse for abandoning
the contract is not good and sufficient.

4. In a prosecution under this statute, it is the duty of the court to in-
struct the jury, even in the absence of a written request, that in order
to authorize a conviction, the intention to cheat and swindle the prose-
cutor must have existed on the part of the defendant at the time the
money was advanced.

Accusation of cheating, etc., from city court of Blakely—Judge
Jordan. January 15, 1907.

Submitted March 20,—Decided March 28, 1907.

*Pottle & Glessner, Oliver & Russell,* for plaintiff in error.
*Walter G. Park, solicitor,* contra.

POWELL, J. The defendant was convicted of a violation of the
act of the General Assembly, approved August 15, 1903, which de-
clares, that "if any person shall contract with another to perform
for him services of any kind with intent to procure money, or other
thing of value thereby, and not to perform the service contracted
for, to the loss and damage of the hirer; or after having so con-
tracted, shall procure from the hirer money, or other thing of
value, with intent not to perform such service, to the loss and
damage of the hirer, he shall be deemed a common cheat and swind-
ler, and upon conviction shall be punished as prescribed in section
1039 of the Code." It appears, from the proof in the case, that
in the winter of 1905 the defendant obtained from the prosecutor

$54, with which to pay off an indebtedness to his former landlord, and, at the time of obtaining this money, contracted with the prosecutor to go on his place and work there as a cropper during the year 1906. In pursuance to the contract, he went to the prosecutor's farm in January 1906, and regularly performed the service contemplated, until some time in October, when, without gathering the crop which he had made, he left the prosecutor and went to work for another person. The prosecutor swore that, while there had not been a settlement between them, yet that after an accounting was had of the supplies furnished to make the crop, the defendant would have nothing to his credit, to apply upon the original indebtedness, and that the same had not been otherwise paid. The excuse offered by the defendant for abandoning his contract was a good one; but, since his statement in this respect is disputed, let it be conceded, in order to leave the legal phases of the case more prominent, that his cause was neither good nor sufficient. In his motion for new trial, the overruling of which is now under review, the defendant, in addition to insisting that the verdict is without evidence to support it, complains that the court erred in failing to charge the jury that the defendant must have intended to cheat and swindle the prosecutor at the time he made the contract, or at the time the money was loaned, in order to authorize a verdict of guilty.

1. The title of the act under which the defendant was convicted is as follows: "An act to make it illegal for any person to procure money, or other thing of value, on a contract to perform services with intent to defraud, and to fix the punishment therefor, and for other purposes." This statute, therefore, has for its purpose solely the punishment of fraud, and not the creation of a remedy for the collection of debts or the compelling of the performance of contracts. If a person obtains money from another by intentionally deceiving him with a false promise to return its value in labor, knowing then and there that he does not intend to perform the labor or to repay the money, he is guilty of a fraud, which the law properly punishes; he is in fact what the law characterizes him, "a common cheat and swindler," and deserves the punishment prescribed. But if this fraudulent intention does not exist at the time he gets the money or other thing of value,—if he then in good faith intends to do as he has promised to do,—he has not committed

a crime by taking the money or by making the contract, although he may afterwards, and from a new-formed intention, violate the agreement, even most shamefully. See, in this connection, *Garner* v. *State,* 100 *Ga.* 257.

2. For some time after the passage of this law, grave doubts existed in the minds of the bench and the bar as to its constitutionality, especially in the light of the second section of the act, which provides, that "satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the service so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause and loss or damage to the hirer, shall be deemed presumptive evidence of the intent referred to in the preceding section." However, in the cases of *Lamar* v. *State,* 120 *Ga.* 312, *Lamar* v. *Prosser,* 121 *Ga.* 153, and *Banks* v. *State,* 124 *Ga.* 15, the constitutionality of the statute was before the Supreme Court, and it was held that, since the act, properly construed, was merely designated to punish the fraud, it was not unconstitutional. But, as Justice Cobb says in the *Lamar* case, supra, "The General Assembly can not, under the guise of a statute creating a criminal offense, imprison one who has failed to pay a debt." It is therefore absolutely necessary, in order to sustain the statute at all, that its terms be construed as merely affording punishment for the fraud actually committed, and not as making breaches of contract criminal. Although, as is shown by Justice Lumpkin, in the *Banks* case, supra, it is competent for the General Assembly to prescribe a rule of evidence, as has been done in the second section of the act in question, yet the lawmaking power can no more effectuate an unconstitutional result indirectly, through rules of evidence, than it can through direct substantive enactment. Therefore this section of the act, as well as the other, must be so construed as to limit its application to the perfectly legitimate purpose stated in the title of the act, the punishment of fraud; and as not to extend it to rendering punishable breaches of contract, or the failure to pay debts, where the contemplated fraud did not in fact exist at the time the money was obtained. The legislature has not made, nor did it have the power to make, the circumstances enumerated in this section of the act conclusive evidence of the fraud, and, therefore

(in case the other necessary elements of the offense are supplied), of guilt. Under the rule of evidence therein announced, the only effect to be given to the circumstances enumerated is to create a presumption; nor does the new rule alter in the slightest the time-honored doctrine that the evidence as a whole must be such as to establish the defendant's guilt beyond a reasonable doubt. The issue for the decision of the jury is not merely whether the proof has supplied the necessary elements to raise the presumption, but also whether, in view of all the evidence, the presumption is, beyond a reasonable doubt, well founded.

3. If a statutory rule of evidence is, by reason of its generality, capable of being applied by the courts to instances wherein such application would effectuate results forbidden by constitutional law, the courts must refuse to extend its application that far. See, in this connection, Cooley's Con. Lim. 452, 453. Such forbidden application of a rule of evidence arises when under such a rule the court allows the proof of acts which are not themselves criminal, and which the legislature has not the power to make criminal, to create the presumption that the defendant is guilty of another act, which is criminal, but which the acts necessary under the rule of evidence in question can not, under the circumstances, reasonably tend to establish. For the purpose of a reductio ad absurdum, let us suppose that the legislature had prescribed, under the guise of a rule of evidence, that, upon trials for murder, proof of the fact that the defendant is not a member of some Christian church should be presumptive evidence of his guilt; there would be no hesitancy in holding that the prescribed rule could not be given effect by the courts; because it is plain that religious liberty is a constitutional right, and lack of church membership is not a relevant circumstance tending to show guilt of murder. Yet we can conceive of some cases in which the fact that the defendant did or did not belong to a church might, under peculiar circumstances, be relevant and admissible in evidence upon the issue; and if there be cases in which such evidence would be competent and relevant, there is no constitutional objection to the legislature prescribing the effect to be given to it, provided of course that it is not made conclusive. Now immunity from imprisonment for debt or breach of contract is just as high a constitutional right as is religious liberty.

However, in some cases the fact that a person has not paid a debt or has broken a contract may be relevant as illustrating the defendant's fraudulent intention in creating the debt or in making the contract, provided that the non-payment of the debt or the breach of the contract be not, in juridical contemplation, too remote, in point of time or circumstance, from the act sought to be illustrated, to be relevant to the issue. If the non-payment of the debt or the breach of the contract, in a particular case under investigation, has actual evidential value reasonably tending to establish the fraudulent intention of the defendant at the time of making the debt or contract, there is no constitutional reason why the courts may not in such instances give effect to a statutory rule of evidence prescribing that a presumption shall arise upon proof of such facts; conversely, where the circumstances under which the failure to pay the debt or perform the contract are such that the delinquency can not reasonably have probative value as tending to show the defendant's fraudulent intention at the inception of the debt or contract, the courts can not, even with express legislative sanction, allow an essential element of the defendant's guilt to be presumed therefrom. Therefore the rule of evidence prescribed in the second section of the act of 1903 in question must not be extended in application to cases where the breach of the contract is too remote in point of time or circumstance from the defendant's intention at the date of the inception of the contract to be reasonably relevant as illustrative of such intention. Thus construed this law is valid; and does not, under guise of a statute creating a criminal offense and prescribing rules of evidence therefor, create imprisonment for debt or violate the constitutional inhibition against such imprisonment; otherwise construed it would; and courts will not, except from necessity, give to a legislative enactment a construction which would render it violative of constitutional rights. The relevancy of testimony to an issue is a judicial question; is addressed to the court and not to the jury; and must be determined according to the circumstances of the particular case, although the decision thereof may require the inspection of and an opinion upon the other facts already in the record; likewise is the question as to when the rule of evidence under discussion is applicable, and when not. We have no hesitancy in holding that when, as in the case at bar, the defendant, after procuring the money and making the contract of

labor, duly goes forward with the performance of the services contemplated, and makes a crop, and, after he has placed over nine months of labor between him and the creation of the contract, then violates it, such violation is too remote in point of time and circumstance from the intention at the time of procuring the money to be relevant; on objection to its relevancy such testimony should be excluded; being admitted, it has no probative value, and the defendant can not be lawfully convicted thereon.

4. In all prosecutions under this law the intention of the defendant at the time of obtaining the money and making the contract is so directly in issue that a failure to instruct the jury explicitly in relation thereto, even in the absence of any request, is reversible error. Existence of a fraudulent intention at the time the defendant became a debtor is the very gist of the offense. *Lamar* v. *Prosser*, 121 *Ga.* 154 (7).                    *Judgment reversed.*