## 413. PATTERSON v. THE STATE.

1. The act of the General Assembly, making it illegal for any person "to procure money or other thing of value on a contract to perform services, with intent to defraud" (Acts of 1903, p. 90), like every criminal statute, is to be strictly construed. It can not be construed as an act to compel payment of debts or performance of contract. The offense being denominated cheating and swindling, it can not be proved without proof of loss and damage, but this, though necessary, is merely incidental. The paramount, controlling, ever-essential element of the offense, which must be proved to have been coexistent with the debt or contract, is the intent to defraud.

2. A conviction under the act of 1903 is not authorized where the evidence merely shows that the defendant, upon a comparison of accounts with the hirer, is indebted to the latter for an unpaid balance of account. The State is obliged to select a certain definite transaction (unless it prefers, either in the same or different counts, to charge more than one), as to which it must be proved that the defendant, with the intent of not performing the service, procured a definite sum or definite articles of value, with the definite, fraudulent purpose of causing loss or damage, and of thereby cheating the hirer. A prosecution under this act will not lie for injury to any one except the hirer.

3. The act of 1903, supra, creates two distinct offenses, the commission of either of which, if the act done was induced by an antecedent fraudulent intent, causes the actor to be deemed a common cheat and swindler. It creates two new classes of law-breakers. In the one class are included those who contract to perform services with intent to procure money or other thing of value and do not intend to perform the service. The second class is composed of those who, after having made a contract, procure money or other thing of value, with fraudulent intent not to perform the services contracted to be rendered. The statute makes two distinct offenses, and the defendant is entitled to know whether he is charged with both or only one of them, and, if only one, which one he is required to answer. And he must be so charged as to enable him to plainly know of which offense he stands accused, and thus be able to prepare his defense.

4. This statute was not intended to provide a means of having an accounting and to secure effectual settlements by laborers and croppers at the end of the year, although it be true that the dread of a criminal sentence is more effective than a worthless fi. fa. Advancements which may have been procured by the employee with honest intentions can not be taken into account together with advancements fraudulently procured, and the assumption made, after deducting credits due the employee, and striking a balance, that such balance was procured in fraud by the defendant. The intent to defraud must be shown to have existed at some particular time, and with reference to a particular advancement.

Accusation of cheating, etc., from city court of Newton—Judge Johnson. March 4, 1907.

Submitted April 22,—Decided May 9, 1907.

*H. M. Calhoun,* for plaintiff in error.

*Benton Odom, solicitor,* contra.

RUSSELL, J. This case was tried before his honor, the judge of the city court of Newton, without the intervention of a jury, a jury trial not being demanded. The court adjudged the defendant guilty, and, upon motion therefor, refused him a new trial. We think a new trial should have been granted, and, therefore, that the court erred in overruling the motion. It is unnecessary to consider all the assignments of error. Some of them are devoid of merit, and the discussion of others can serve no useful purpose, as it would but recall well-recognized principles. We shall, therefore, only refer to the considerations which control our judgment in reversing the judgment of our brother of the trial bench.

This defendant was charged with a violation of the act of 1903, making it "illegal for any person to procure money or other thing of value on a contract to perform services, with intent to defraud." Acts of 1903, p. 90. In this act the General Assembly declares that "if any person shall contract with another to perform for him services of any kind, with intent to procure money or other thing of value thereby, and not to perform the service contracted for, to the loss and damage of the hirer; or, after having so contracted, shall procure from the hirer money, or other thing of value, with intent not to perform such service, to the loss and damage of the hirer, he shall be deemed a common cheat and swindler, and upon conviction shall be punished as prescribed in section 1039 of the Code." And in the second section it is enacted that the intent to defraud shall be presumed, upon "satisfactory proof of the contract, the procuring thereon of money or other thing of value, the failure to perform the services so contracted for, or failure to return the money so advanced with interest thereon at the time said labor was to be performed, without good and sufficient cause and loss and damage to the hirer." As the legislature could not pass a law which would, by any device or construction, countenance or allow imprisonment for debt, and as such can not be presumed to be the legislative

intention, it follows that neither the existence nor the non-payment of a debt can be an essential ingredient of the crime. The fact of indebtedness can only be persuasive evidence, which may or may not lead to the conclusion that the paramount, controlling, ever-essential element of the offense—the intent to defraud—was pre-existent to the debt and caused the extension of the credit.

Every crime consists in the union or joint operation of act and intention. Sometimes the intention can be proved, sometimes it can only be inferred or presumed; and the general rule laid down by our code is, that the intention will be manifested by the circumstances connected with perpetration of the offense. Penal Code, §32. An intention to defraud is a peculiar mental state, and as it can not be seen or touched, and as no witness can testify to its presence or absence by insight into the kaleidescope of another's mind, its existence can only be developed and demonstrated by the conduct of the party under investigation. In this particular statute the intention is peculiarly the crucial test of guilt or innocence, and it is extremely doubtful if the general rule can be fully applied, because our Supreme Court, in defining and limiting §32, very properly holds that "the law presumes that every act *which is in itself unlawful* was criminally intended, until the contrary is made to appear." *Lawrence* v. *State,* 68 *Ga.* 289. The very safety of society requires the observance of this rule as to acts *in themselves unlawful.* The principle there is, that, the act being unlawful, the violator of the law will be presumed to have intended the results which naturally follow the unlawful act. But can this rule be applied where the act of itself is not unlawful? To the mind of the writer the question is a serious one. It is certainly not unlawful, in any criminal sense, to contract with another to perform services, and then not perform them, although there was at the time of the contract an intention to procure money by reason of the contract. If no money was in fact obtained, it would be simply to make a debt with no intention of paying it,—the making of a contract for breach of which the opposite party would be entitled to his action for damages. And to procure money or goods from the hirer after the contract has been made, taken alone, is but the creation of the debt. We are well aware

that the legislature can do away with the principle contained in §32 (*Loeb* v. *State,* 75 *Ga.* 263); and it may be that it was the legislative intent, in the passage of the act of 1903, to apply the same rule to acts in and of themselves not criminally unlawful, as to those punished by law as crimes. In any event we are bound by the decisions of the Supreme Court in *Lamar* v. *State,* 120 *Ga.* 312, and *Banks* v. *State,* 124 *Ga.* 15, to hold that the act is constitutional.

The law was sustained, however, on the express idea that it was to be so construed as not to penalize non-payment of debts or lend the aid of the criminal law to the enforcement of mere civil contracts. It is a cardinal rule of construction that criminal statutes are to be strictly construed in favor of every citizen whose liberty is put in danger by accusation of crime. This rule should in no degree be relaxed, either in construing the statute or applying the proof to the charge, in a statute like the act of 1903, now under our consideration,—an act which (no matter how healthful its general purposes or how beneficial its effect in some cases), nevertheless, at all times exposes, and sometimes, we fear, subjects, the weakest, the poorest, and the most unintelligent of our citizens to oppression and injustice at the hands of the powerful, shrewd, and unscrupulous. We do not mean to say that this law is used in this way, or that there are not very numerous instances where the law serves a proper purpose. We are speaking now only of the easy possibilities of misusing the law for the very purpose the legislature did not intend, —the collection of debts and the enforcement of civil contracts, without regard to the intention of the defendant. The intention to defraud must be clearly shown in every case before there can be a lawful conviction, under the statute, and proof of the fraudulent intent must be established by the same rule as other facts in criminal cases.

The statute of 1903 adds, to the catalogue of those acts heretofore made penal, two acts, the commission of either of which, if such act is induced by an antecedent fraudulent intent, causes the actor to be deemed a common cheat and swindler. It creates two new classes. It sets out two distinct offenses. In the one class is included any person who contracts to perform services of any kind with intent to procure money or other thing of value

and does not intend to perform the service. If loss or damage results to the hirer, such person is, on conviction, to be punished as a common cheat and swindler. This is the distinct class of those who get the money on the faith of the contract but never set to work. The fraudulent intent antedates the contract. The second class is composed of those who, after making a contract, procure money or other thing of value with intent not to perform the service. This includes all those who, being already under contract, then conceive the fraudulent intent. The fraudulent intent must antedate the full performance of the contract, but need not have existed before the contract. The statute makes two distinct offenses, and the defendant is entitled to know whether he is charged with both, or one of them, and, if only one, which one he is required to answer. And he should be so charged in the accusation as to enable him to prepare his defense. It appears, from the accusation, that this defendant was only charged with the second offense in the act,—cheating and swindling after the contract was made. The accusation alleges that "after having contracted with M. A. Klias to perform labor for him as a farm laborer, by entering into a contract with said Mathew Klias to work a crop on halves with him for the year 1906, . . did, with the intent not to perform said labor, procure from said Mathew Klias the sum of $55.70 in money, did without any excuse fail to perform said labor, thereby damaging and injuring the said M. A. Klias in the sum of $55.70," etc.

The prosecutor testified, that the defendant contracted with him in December, 1905, to work with him and to run a one-horse farm on halves, on his (the prosecutor's) place, for the year 1906; that the defendant moved on the prosecutor's place in January, 1906, made his crop, and laid it by, and the prosecutor had no cause of complaint as to the defendant's working the crop. But he would not gather his crop as he should have done. Defendant and his family gathered some of the crop, but would not gather it all, and witness had to employ cotton-pickers to gather some of it. On December 22, 1906, defendant moved off prosecutor's place, and left five or six hundred pounds of seed cotton in the field. Prosecutor furnished defendant, on the faith of the contract of labor, $5 a month in cash from January to August, paid W. J. Kidd $10, and Dr. Griffin $22, for the defendant, and

furnished to the defendant merchandise and other things (of which he had an account on his books at home). The total amount furnished to the defendant, including the money advanced, was *about* $200. Prosecutor further testified that defendant made four bales of cotton, the cottonseed therefrom, and seventy-five bushels of corn, one half of which, under their contract, belonged to defendant; but witness got all of this, and, after he gave him this credit, defendant still owed him $55.70, and moved off his place owing him. The warrant put in evidence showed that it was sworn out on February 4, 1907. The defendant stated, that he and his family gathered all the crop in the fall that they could gather; that out of the four bales of cotton the prosecutor only let him have $3 to buy provisions, and did not let him use any of the corn for bread, and that the prosecutor would not let him have bread out of the field, nor furnish him with money with which to buy food. He stated that he completed his contract and gathered all of the crop before he moved away, about Christmas, 1906.

The objections to the accusation were waived by the joinder of issue, and can not be considered. And we will not consider the exceptions in regard to the different initials and name by which the prosecutor was denominated in the accusation; because (if Mathew Klias and M. A. Klias are not one and the same man) the fact that the accusation sets forth that defendant entered into a contract with Mathew Klias and concludes that M. A. Klias was injured would have afforded good ground for general demurrer, as setting forth no offense, inasmuch as a prosecution under the act of 1903 will not lie for injury to any one except the hirer. We think the court erred in refusing a new trial upon the 8th ground of the motion. The court allowed the witness Klias to testify, and admitted in evidence, over the defendant's objection, the statement from that witness, that he had furnished merchandise and other advances, which, together with the money furnished, amounted approximately to $200, and, after receiving all of the crop made by defendant and crediting him with it, it still left defendant indebted to him $55.70. The objection insisted on at the time was, that this evidence was illegal, irrelevant, and inadmissible. We think that the objection is well taken. It was certainly irrelevant, to the charge made in the

accusation (that the defendant had procured $55.70 in money at one certain time with fraudulent intent), to prove anything in regard to "merchandise and other articles" furnished at various other times. The evidence was illegal because irrelevant and inadmissible, and because it plainly established the fact that the subject-matter of the prosecutor's evidence was the unpaid balance of an indebtedness running through an entire year, for which the prosecution could not be maintained, instead of being an amount of money alleged to have been illegally procured by means of a fraudulent intention formed at a particular time. It is very plain to us that the objection to the evidence should have been sustained. And if this evidence be rejected, there is none upon which the judgment of guilty can rest. The excuse given by the cropper in this case for even his temporary absence from the farm was good,—that he is a father, and his family had to have food, and his employer failed to furnish it, and even refused to let him have corn from the field for bread. And this statement was uncontradicted even by the prosecutor. But as the court did not believe it, we will, for the purpose of the case, eliminate it from the record. *Lamar* v. *Prosser*, 121 *Ga.* 154. This statute was not intended to provide a means of an accounting and to secure effectual settlement by laborers and croppers at the end of the year. The dread of a criminal sentence is more effective than a worthless fi. fa. The hirer can not take advancements which may have been procured by his employee with an honest intention to perform service, and to those add advancements fraudulently procured, and, by striking a balance, assume that the balance is the amount procured in fraud by the defendant. The intent to defraud must exist at some particular time, and with reference to some particular advancement. It can exist as to more than one transaction, but, in that event, is a distinct offense, and must be so charged and proved.

Failure to return the money is one of the circumstances from which, by the terms of the second section of the act, the intention to cheat may be presumed, and failure to perform labor is another; and yet both of these, by the very terms of the statute, may be nullified, if the employee had good and sufficient cause for neither paying nor working. The statute was not intended to enforce contracts, or collect debts uncollectible by ordinary proc-

ess. If, by reason of sickness or other unavoidable cause, the contract of labor can not be performed, nor the money repaid, neither the non-payment of the debt nor the failure to work raises the presumption of a fraudulent intent. The hirer must show loss or damage resulting from the particular fraudulent transaction upon which the prosecution is based,—either partial or total loss of the money he advanced, or the labor he lost; but that is merely for the reason that the offender is deemed a common cheat and swindler. And it is elementary that there can be no cheating without proof of loss. The offense can not be proved, therefore, without proof of loss and damage. But proof of loss and damage will not alone suffice to establish guilt. For instance, in the present case, if the defendant had acted, with regard to the cultivation of his crop, in the manner that the prosecutor testified that he did, and hail or wind, or a cloudburst, had destroyed it, the hirer's loss would have been far greater than (without giving the cropper any credit for his cottonseed) he estimated it to be, and yet no one would seriously insist that the mere procuring of money and advances, the failure to perform service or to repay the money with interest, no matter what was the hirer's loss, would render the defendant guilty of cheating and swindling.

The State alleged that $55.70 was procured with fraudulent intent, as the transaction on which it planted its case. It was obliged to select a certain definite transaction (unless it preferred, either in the same or in different counts, to charge more than one) in which the defendant, with the intent of not performing the service, procured a definite sum or definite articles of value, with the definite fraudulent purpose of causing loss or damage by not repaying, and of thereby cheating the prosecutor. The legal evidence totally failed to show that the defendant ever received the amount of money alleged in the accusation at the time alleged, or at any other time within two years before the date of the accusation.

This court is most reluctant in any case to set aside the verdict or the judgment of a court acting as a jury; and will never disturb such finding on the ground that it is contrary to evidence, where there is any evidence to support it; but where there is no evidence to authorize the verdict, it is contrary to law, and must for that reason be set aside. *Judgment reversed.*