## 700.  FULLER *v.* THE STATE.

1. To authorize a conviction of a violation of the labor-contract act of 1903 (Acts of 1903, p. 90), the evidence must show an intent to defraud on the part of the accused, and loss on the part of the person alleged to have been cheated and swindled.

2. Testimony on the part of a witness that a certain payment was an advance is not competent evidence of that fact. It is the province of the jury to determine, from the facts in connection with the payment, the state of the employee's account with his employer, and whether the payment made was an advance, or part payment of an indebtedness for labor, due by the employer to his servant.

Accusation of cheating and swindling, from city court of Americus—Judge Crisp. July 19, 1907.

Submitted October 9,—Decided October 22, 1907.

*Howell B. Simmons,* for plaintiff in error.

*Zach. Childers, solicitor,* contra.

RUSSELL, J.  The defendant may be guilty, but his guilt was not legally established. The burden of establishing his guilt devolves upon the State, and if he be guilty the fact can be shown, as it must be, by sufficient evidence. The evidence, as it appears in the record, not being sufficient to authorize a conviction of the violation of the labor act of 1903, we feel it to be our duty to grant a new trial. The learned trial judge erred in overruling the defendant's motion for a new trial, for the reason that the verdict, so far as the evidence is concerned, is contrary to law. The only facts shown by the State, as disclosed by the record, were that the witness, Jones, paid $108 for Ambrose Fuller, and at the same time made a contract with said Fuller in behalf of his (Jones') employer, Johnson, by the terms of which contract Fuller was to work twelve months for Johnson. The contract appears in the record, and is as follows:

"Georgia, Sumter county. I, Ambrose Fuller, do solemnly swear that I am not under a written contract as employee, tenant, or cropper, with any person for the period or any part thereof covered by the contract I am about to make with Mr. R. W. Johnson. Signature of the affiant: Ambrose Fuller (his x mark). Sworn to and subscribed before me, this 12th day of December, 1906. Signature of attesting officer: G. E. Buchanan, N. P. S. Co., Ga."

for instance, the note to secure which the mortgage was given was not due until January 1, 1908, the employer would have no right whatsoever to apply the wages of the defendant to the payment of the mortgage indebtedness. As the mortgagor was the mother of the defendant, and as, by the very nature of the case, if the defendant's wages were to be applied to the payment of the $108 mortgage and interest thereon, the result of defendant's contract would be that he would get nothing himself for his labor during the entire year, and as the court can take judicial knowledge of the fact that food and clothing are necessary and ordinarily must be bought by those who use them, the contract, if thus construed, in the absence of any proof of the contents of the mortgage, would evidence a system of peonage, which this court is now asked to uphold.

Taking the case as we find it, the evidence shows that the defendant had worked nearly four months for the prosecutor upon the contract; and the only payment shown by the State and called an "advance" is the sum of $2. To make a case which would authorize the jury to infer fraudulent intent, the State should have shown that the $10 a month for the time which had elapsed had been paid to the defendant, and that when he obtained the $2 he became thereby indebted just that amount, or some other amount which he had not repaid, either by working on his contract or by returning the money, and that thereby his employer had sustained a loss either of the $2 or some portion of it. There is no legal evidence showing that the defendant ever received anything from his employer except the $2, and all of the evidence is clear that he worked in pursuance of his contract from December 12, 1906, to April 9, 1907. It is true that the prosecutor testified that this $2 was an advance. It is insisted that the word "advance" necessarily means a payment of money which had not been earned, and, for that reason, that the use of that word by the witness establishes the fact that all pre-existing indebtedness for labor had been paid by the prosecutor to the defendant. We hold that such is a reasonable construction of the word "advance;" and yet the use of that word by the witness established nothing for the jury. The jury, instead of being given the facts upon which the witness based his conclusion, and from which they might have drawn an entirely different conclusion, were compelled to adopt a mere

opinion of the witness, which may or may not have been well founded. In our judgment, this opinion volunteered by the witness had no evidential value. If it should hereafter appear, upon the trial which we now order, that the prosecutor had complied with his agreement and had paid the defendant $10 per month for nearly four months during which he had been employed prior to the payment of the $2, and that, therefore, at the time the $2 was paid he owed the defendant nothing, and if it should further appear that the $2 was not repaid and the defendant quit the service of his employer without sufficient cause, the conviction of the defendant would be authorized. But if it should appear that the defendant quit the service of his employer with a balance still in his favor for work done, there could be no conviction. And this would be true regardless of the intent of the defendant; for the prosecutor would not have sustained any loss by reason of the advance. The payment of the wages to which we have alluded might be shown by proof of payment directly to the defendant; or if it can be established that there was an agreement embodied in the mortgage, or otherwise evidenced in writing as part of the contract, that the wages of the defendant were to be applied to the payment of the indebtedness secured by the mortgage, for the benefit and protection of the mortgagor, and that his wages were thus paid to him by having been so applied that, and that for that reason no part of the wages which had been earned by the defendant had been paid at the time the $2 was advanced, and that thereby the prosecutor sustained loss, a conviction can be sustained; but this record does not disclose any of these essential facts. The fact that the employer had taken other security does not in any way illustrate the intention of the accused at the time he procured the advance. This was our ruling in *Harwell* v. *State,* ante; and for this reason the learned trial judge well says in his opinion, filed in the record, that "a verdict of guilty of the original advance of $108 at the time the contract was made can not be upheld." And for the further reason that in the *Mulkey* case the evidence showed that the defendant entered upon a contract and worked more than three months for the prosecutor after that advance was made. It is clear to our minds, under the evidence, that the $108 in this case was not, strictly speaking, an advance upon the contract; because there is no evidence that the defendant requested

the prosecutor to pay his indebtedness, and it is testified that one purpose of making the advancement and securing his mother's mortgage was to indemnify the witness against loss on a criminal bond which, so far as appears from the evidence, was in no way connected with this case. In the absence of evidence to the contrary, it is to be presumed that the mortgagee had security ample for the dual purpose. In the absence of express direction to apply the defendant's wages as a credit upon the $108 debt, the defendant would have the right each month, before the maturity of the mortgage, to demand payment of his wages; and it is only in case there was such express direction that the prosecutor would have the right to refuse to pay the defendant his wages, and to apply them upon the debt evidenced by the mortgage. It not being made clearly to appear that the defendant had received any advance at the time that he quit the service of his employer, nor that the employer was defrauded or sustained any loss, a new trial is ordered.                        *Judgment reversed.*

POWELL, J., dissenting. There is not the slightest disagreement among the members of this court as to the proposition that the act of 1903 is designed purely for the punishment of frauds, and that it is not to be perverted into an instrumentality of oppression or a harsh remedy for the collection of debts. Yet the act, legally construed and fairly applied, has a beneficial and useful purpose to subserve. As to the $108 advanced by the prosecutor before the labor began, it is plain that no legal conviction can be based on it, under the circumstances of the present case. The defendant's desertion of his contract of labor is too remote in point of time and circumstance to be evidentiary of any fraudulent intent at the time that payment was made by the prosecutor; and in his opinion filed in the record the trial judge recognizes this to be true. See *Mulkey* v. *State,* 1 *Ga. App.* 521 (57 S. E. 1022). My brethren of this bench agree with me in the proposition that, if the $2 paid to the defendant on the Saturday night before he left the prosecutor was in fact an advance under the contract, the defendant's leaving without good excuse and without repaying the $2 might be evidentiary of an intent to cheat the prosecutor out of that sum, upon which theory the conviction could be sustained. But my colleagues say that there is no proof that this $2 was in fact an advance; and here comes the point of our disagreement and my

dissent. In the first place the prosecutor testified in direct terms that the $2 was "advanced" to the defendant. My fellows say that this' has no sufficient probative value, because it merely states a legal conclusion without giving the facts on which it is based. To my mind, not so. The use of a word which ex vi termini connotes a number of individual facts that in their sum total go to make up the meaning of the word (as, in the present case, the word "advance" contains in itself the idea of a sum of money paid, not for services rendered in the past, but to be rendered in the future) does not render the statement of the witness opinionative, any more than it would be opinionative of him to express the same idea by the circumlocution of many words. When the witness says "I advanced to him two dollars," it means no more and no less than if he had said "I gave him two dollars, not for work already performed, but for work to be performed by him in the future." However, I may waive this point, for I think the record otherwise discloses that this $2 was an advance in the true sense of the word. On December 12, 1906, when the contract was made, the prosecutor paid for the defendant the $108. This payment, by the direct, undisputed testimony, was paid "on the contract." This was sufficient to pay all the monthly payments due by the promisor under the contract for a period extending far beyond the time when the defendant left his employment; so that whatever sum was paid to the defendant at the time he left and before this $108 had been worked out was necessarily an advance. My colleagues, to avoid the effect of this, say that this $108 was secured by a mortgage given by the defendant's mother on her house and lot; and this fact does appear in the record. They say that the date of the maturity of this mortgage does not appear. So; but if necessary, as to this date a presumption should be indulged which would uphold the verdict, not one which would defeat it. This, however, is unnecessary, for the maturity of this mortgage is wholly immaterial. Take the supposititious case proposed by my colleagues, that the mortgage, given by the mother to secure the performance of the son's contract to repay the $108 by his labor, does not become due until January 1, 1908; would this alter the case? The mother's mortgage is only a collateral undertaking; and while the prosecutor could not proceed against her until the mortgage actually matures, this fact in no wise impairs the terms

of the contract between him and the defendant. Indeed, if that mortgage had been made due one day after date, still under the law, it having been given merely as security for the defendant's contract, it could not be foreclosed until the defendant had broken the main contract. An elemental principle of the law of surety-ship compelled the prosecutor to credit the defendant's labor to the extinguishment of the debt for which the mother, through the mortgage, stood security. Every dollar the prosecutor paid to the defendant on his wages, the $108 not being first repaid, pro tanto released the surety and the mortgage. *Underwood* v. *Bass,* 1 *Ga. App.* 623 (57 S. E. 953), and cases cited. In the majority opinion in the present case it is said: "If it can be established that there was an agreement embodied in the mortgage, or other-wise evidenced in writing as part of the contract, that the wages of the defendant were to be applied to the payment of the indebt-edness secured by the mortgage, for the benefit and protection of the mortgagor, and that his wages were thus paid to him by having been so applied, and that for that reason no part of the wages which had been earned by the defendant had been paid at the time the $2 was advanced, and that thereby the prosecutor sustained loss, a conviction can be sustained; but this record does not dis-close any of these essential facts." The obvious reply is that the law itself embodies into the transaction this duty of applying the defendant's wages to the reduction of the sum already paid him, and secured by his surety's mortgage, and all courts are required to notice judicially the legal effects growing out of transactions. That which is judicially recognized need not be proved.

Having paid the defendant $108 at the inception of the con-tract, the prosecutor owed the defendant nothing else thereunder until the ten months and twenty-four days expired,—for the wages were at the rate of $10 per month. Anything else paid him in the meantime was an advance. The question then stands out, "How is the laborer to support himself in the meantime?" "Aye, there's the rub!" If the defendant had left the prosecutor because the contract he had made was so hard that he could not live up to it in reasonableness and the prosecutor had refused to ameliorate the hardship by making advances or otherwise, the excuse for quitting would have been a good one and the defendant would have been exempt from criminality. But he presents no such excuse.

In fact the prosecutor swears that pending the employment he made advances. Taking advantage of this liberality of his employer in advancing him money beyond what the letter of the contract. required, the defendant obtained the two dollars on Saturday night; on Monday morning he was absent from his post of duty, and thereafter came no more,—to employ the colloquial phrase, he had "skipped out." I think the verdict of guilty should stand.

## 729.   GLAZE v. THE STATE.