## 2021.　KIRKLAND v. THE STATE.

HILL, C. J.　This case is fully controlled by the decisions of this court in
*Mulkey* v. *State*, 1 *Ga. App.* 521 (57 S. E. 1022), and *Patterson* v. *State*,
1 *Ga. App.* 782 (58 S. E. 284).　There is no evidence to support the ver-
dict, and a new trial should have been granted.

　　　　　　　　　　　*Judgment reversed.　Powell, J., dissents.*

Accusation of misdemeanor, from city court of Waynesboro—
Judge Davis.　July 7, 1909.

Submitted October 4,—Decided October 13, 1909.

The accusation was based on the "labor-contract act" of 1903
(Acts 1903, p. 90).　The motion for a new trial was on the general
grounds, that the verdict of guilty was without evidence to support
it, etc.　Rhodes, the prosecutor, testified, that on the last Saturday
in November, 1908, the defendant, who was then working with him
as a "cropper" under a contract for the year 1908, made an oral
contract with him "to run a share-crop for the year 1909," on
which he made advancements to the defendant as follows: De-
cember 23, 1908, $23; January 2, 1909, $7; February 1, $7; Feb-
ruary 28, $8; also $1.54 in meat on January 1, and 75 cents in to-
bacco on February 28.　The defendant began his crop and stayed
on the place and worked until March 13, 1909, when he left with-

out the knowledge or consent of the prosecutor. From March 1 to the 13th, on account of bad weather, there was very little to do, and he worked only a day or so on the crop contract. He left with his family (who had been working with him), saying he was going to visit relatives and would return to work on the following Monday. He did not return, and the money advanced was not returned, and no offer was made to return it. It was nearly a month before the prosecutor found where he was. When he left he owed the prosecutor $48, this including "everything in provisions, supplies, and cash;" and the prosecutor lost this amount by reason of the defendant's failure to carry out the contract, "besides the guano and other things," and would have lost more if he had not been able to get somebody to work the crop. He testified, that he gave the defendant no cause to leave, and that there had been no complaint on the part of the defendant. The defendant had been working with him since 1906. The defendant stated to the jury, that since the close of the first year, he had been begging Mr. Rhodes for a settlement, and had never gotten one; at the end of the last year Rhodes promised to settle for that year when certain cotton in the warehouse was sold, but did not keep the promise, and told him that the cotton brought only enough to settle his last year's account, and that there was nothing coming to him; he and his wife and child were "barefooted and almost naked," and needed their part of the crop, and he told Rhodes this; finally Rhodes would not let him have the money to buy rations, but would furnish them and charge very high prices for them; he "did slip away from" Rhodes, as other negroes had done, because they knew that if Rhodes found out that they were going to leave, he would beat them to death. "I don't owe Mr. Rhodes a thing in the world. . . Mr. Rhodes worked me to death, me and my wife and my child, and would never give me a settlement or pay me what he owed me, and I had to choose between staying there and me and my wife and my child starving, and that's the reason why I left him. If he had paid me what he owed me, I would have been staying there right now with him making cotton and corn." These statements were denied by Rhodes, and he testified: "He [the defendant] asked me once or twice for a settlement; he knew his cotton was at Augusta, and he told me not to sell it; and when I sold it I placed it to his account and he got credit for it. When I credited his last year's account

with the proceeds from the sale of cotton it left him nothing. . . He had no right to be afraid of me. I had never hurt him. He was a good worker and always made good crops. I went to Mr. Smith, the man whom he went to after leaving me, and I told Mr. Smith that if he would pay me the $48 that the negro owed me I would not prosecute him; I did not want to prosecute him; I only wanted to collect what the negro owed me. I never gave him any statement for his work of 1908. When his cotton was sold in February, 1909, it took all to balance his indebtedness for 1908." Cited by counsel, besides the cases cited in the foregoing decision, *Mosely* v. *State*, 2 *Ga. App.* 191.

*E. L. Brinson, C. B. Garlick,* for plaintiff in error.

*F. S. Burney, solicitor, H. J. Fullbright,* contra.