### 4373.   THOMSON *v.* McLAUGHLIN.

1. A promise to do certain acts or perform certain services, made to induce the execution of a promissory note, though made with no intention of performance, is not such a fraud as will authorize the admission of parol evidence thereof, to vary the terms of a note which contains no such condition or stipulation.
2. The consideration of a note is always a legitimate subject of inquiry, but where it is insisted that a part of the consideration was a verbal promise, and the evidence as to such promise would completely defeat and void the note, by proof of negotiations and agreements which could and should properly have been included in the writing, and there is no contention that the omission of these stipulations from the contract was due to either fraud, accident, or mistake, parol evidence upon the subject should not be admitted.

DECIDED AUGUST 30, 1913.

Complaint; from city court of Madison—Judge Anderson.   July 9, 1912.

*Williford & Lambert, Samuel H. Sibley,* for plaintiff in error.
*Percy Middlebrooks, Payne & Jones,* contra.

RUSSELL, J.   McLaughlin sued Thomson on a promissory note for $101.19 principal.   The defendant filed a plea in which he set up that he was induced by fraud to sign the note.   The fraud as alleged consisted in promises by McLaughlin to Thomson to the effect that if Thomson would take certain insurance policies from the company of which McLaughlin was agent and give notes for the premiums, he would assist Thomson to write certain insurance, from which Thomson would earn more than enough commissions to pay the premium notes.   It was alleged that these promises were fraudulent, because McLaughlin, at the time he made them, had no intention of complying with them.   McLaughlin's promise, it was alleged, was accompanied by the statement that he would guarantee that Thomson would earn a sufficient amount in commissions, upon business which McLaughlin would help Thomson to write, to pay the note.   Two notes were given,—one for $151.80,

and one for $101.19. Thomson paid the first note at maturity; and in his plea he asked for a recovery against McLaughlin of the amount of the paid note. The note sued on was given in renewal of the second note; and in his plea he asked that he be relieved from payment of the note sued on, because it was fraudulent and illegally obtained, and was without consideration. The court overruled a demurrer to this plea; and, as the plaintiff did not except to this ruling, it became the law of the case, and the court was bound to adhere to it in the subsequent conduct of the trial. *Georgia Northern Railway* v. *Hutchins,* 119 *Ga.* 504 (46 S. E. 659) ; *Hawkins* v. *Studdard,* 132 *Ga.* 265 (63 S. E. 852, 131 Am. St. R. 190). Upon the trial, however, the testimony developed that the representations and promises made by McLaughlin to Thomson did not amount to a fraud; and thereupon the court (as we think, correctly) excluded all the testimony that had been introduced, and directed a verdict for the plaintiff.

The testimony adduced not only sought to avoid the note because of fraud in procuring its execution, but it tended to vary the terms of this unconditional contract in writing; and but for the ruling of the court upon the demurrer, none of it would have been admissible. But, conceding for the purposes of the case, and in view of the ruling on the demurrer, that the testimony was legally admissible, it failed to show fraud. The history of the transaction as related by Thomson himself is that McLaughlin, as agent of the Equitable Life Assurance Society, came to the city of Madison, where Thomson resided, and induced him to take a $10,000 policy of term insurance, upon which the annual premium was $145. Subsequently McLaughlin persuaded Thomson to take, instead of the $10,000 of term insurance, $9,000 of ordinary life-insurance, upon which the annual premium amounted to $252.99, instead of $145, the premium upon the term insurance. The premium upon the $9,000 policy was divided into two notes, one for $151.80 and the other for $101.19, due upon different dates. Thomson testified that he paid the first note upon McLaughlin's assurance that he would come to Madison and assist him in writing enough business to pay the entire premium. As a result of correspondence between the parties before the second note fell due, and of McLaughlin's renewed assurance that Thomson could write enough insurance to pay the premiums, and that he was ready, at any time Thomson

would designate, to go to Madison and help Thomson, the note sued on was given by Thomson to McLaughlin, to cover the amount of the second note; McLaughlin paying the second note (which had been made payable to Burr, manager of the insurance company).

The statements of McLaughlin subsequently to the time when the original notes were executed are of but little materiality; and the inquiry as to whether he was guilty of a fraud should properly be confined to what occurred prior to and at the time the first notes were executed; because Thomson is not in any worse condition by reason of renewing the note than he was when he originally gave it, and there can be no fraud unless injury of some kind results. The only purpose for which the subsequent oral and written communications could be admissible would be to illustrate the motive of McLaughlin in the representations made by him when the first notes were given. McLaughlin gave Thomson the agency of the insurance company at Madison. He told him he could easily get enough business to earn therefrom a sufficient amount in commissions on premiums to pay the two premium notes which he had given. Certainly this was not such a statement as would amount to a fraud, for it related to a matter as to which Thomson's opportunity for knowledge was equal to McLaughlin's. Presumably Thomson would know better than McLaughlin how many probable insurers lived within the territory, for the evidence disclosed that McLaughlin did not live in that vicinity. McLaughlin told Thomson, and he afterward wrote to him, that he would come to Madison and lend his assistance in procuring insurance for which Thomson would be entitled to a commission on the premiums. Upon a former occasion Thomson went with McLaughlin to a few probable insurers in Madison and introduced him. Thomson admitted that he was to lend assistance, in a way, to secure names and prospects. It does not appear that he complied even with this undertaking. Thomson testified: "After he began to talk to me, and I had sufficient confidence in him to believe him, he assured me that I would never have it to pay; and I told him then that I was signing the note, but it was up to him to get it paid. He assured me again I would never have it to pay. I told him I did not have time to devote to the work. I signed two notes payable to Burr, manager of the Equitable Life Insurance Company at Atlanta." "Right at

that same time he asked me to take the agency for the company. He said, 'I want to get somebody here to act as agent, and want you to take the agency.' I told him I didn't have time. He said all he wanted was to have a man here and he would come down and write the business."

It is apparent from this testimony that the statement did not amount in law to a fraud, for there was no reason why Thomson should have reposed any confidence in McLaughlin, no reason why he should have believed his statement, and especially no reason why he should sign a note upon McLaughlin's assurance that he would pay it. The law does not assume that one can be defrauded by such circumstances as these; for there is no reason why one should permit himself to be so defrauded. The act done is a voluntary act, with full knowledge of the law and of all the probable consequences. Furthermore, the statement that McLaughlin was to do all of the work and divide his commissions with Thomson, so as to provide for the payment of Thomson's two notes, would have amounted to nothing more than a subterfuge by which Thomson would have been given the first two premiums; and this would have been a rebate, which is contrary to law. It is very apparent from the record that the court refused to strike the plea in order to enable the court to determine, from the evidence, whether the note had in fact been procured by fraud. Possibly the court erred in not striking the plea. Upon this we are not required to rule; for there was no exception to the ruling on the demurrer. But the court did not err in ruling out all of the testimony after it was introduced, for it is very apparent that it did not support such a plea of fraud as is required by law. It is perhaps true that a fraud might have its inception in a promise made with such apparent sincerity as to deceive the promisee, but which the promisor had no intention whatever of fulfilling. In such a case the making of the promise, if there were any special reason why the promisee should have reposed confidence in the promisor, might amount to a fraud.

We do not think this case is similar in principle to that of a violation of the labor-contract law as embodied in section 715 of the Penal Code; for a statutory rule of evidence gives vitality to the penal statute. But even if such a rule were applied, a finding that McLaughlin was guilty of fraud would not be author-

22

ized; for, under the rulings in *Mulkey* v. *State*, 1 *Ga. App.* 521 (57 S. E. 1022), *Patterson* v. *State*, 1 *Ga. App.* 782 (58 S. E. 284), and numerous other cases, it must have appeared that McLaughlin entertained the intent to defraud at the time he procured the notes; and the testimony as to his subsequent conduct, as well as the letter which was introduced in evidence, wholly rebuts such an inference. The evidence of Thomson himself (who was the only witness in the case) failed to establish that the notes were procured by fraud; and regardless of the ruling of the court upon the answer, this testimony was properly ruled out. The case could have no other proper conclusion; for a false statement is not fraudulent when there is no reason why it should be believed and acted upon. *Branan* v. *Warfield*, 3 *Ga. App.* 586 (60 S. E. 325). It must also be borne in mind that there is no contention that Thomson did not receive the policy for which he contracted, nor that the company in which he is insured is not thoroughly solvent and able to comply with its contract of insurance. Thomson, therefore, has been as fully protected by the contract of insurance which he received in return for his notes as were insured persons who paid the entire premium in cash.          *Judgment affirmed.*