## 5236.  SWILLEY v. THE STATE.

The evidence was insufficient to authorize the conviction of the accused, in
that (*a*) it affirmatively appeared that he labored under the contract
for more than two months,—from January 1, 1913, until the first part
of March, 1913; and hence it can not be assumed that he entertained an
intent to defraud at the time of the making of the contract on June
9, 1912; and (*b*) the State failed to show that he left the service of his
employer without cause.

DECIDED NOVEMBER 25, 1913.

Indictment for cheating and swindling; from Brooks superior
court—Judge Thomas.  August 30, 1913.

*J. D. Wade*, for plaintiff in error. ·

*J. A. Wilkes, solicitor-general*, contra.

RUSSELL, C. J.  The prosecutor was the only witness who testi-
fied.  The defendant made no statement.  According to the testi-
mony of the prosecutor, the defendant made a contract with him
on June 9, 1912, to work thirty acres of land in corn and cotton,
and the prosecutor on that day advanced to him the entire $114
which supplies the basis of the prosecution.  The defendant went
to work on January 1, 1913, in pursuance of his contract, and
worked until about the first of March, when he quit for a few days,
but later he returned and again worked for several days.  The
prosecutor testified that the defendant quit without cause, but

plainly this conclusion is merely opinionative, for no facts are given to support it, as required by the ruling of this court in *Mobley* v. *State*, 13 *Ga. App.* 730 (79 S. E. 907). We do not know whether the $114 which was advanced upon the faith of the contract was an advance in money, or was a payment in settlement of some pre-existing debt of the accused, but it clearly appears in the record that this advance was made nearly seven months before it was contemplated that the defendant should set to work, and the record does not disclose any subsequent advances. The fact that the defendant labored more than two months under the contract rebuts the presumption of an existent fraudulent intent at the time the advance was obtained; and as was held in *Patterson* v. *State*, 1 *Ga. App.* 782 (58 S. E. 284), this pre-existent or co-existent fraudulent intent is an absolutely essential element of the offense sine qua non constabit.

As further negativing the existence of a fraudulent intent at the time that the advance was obtained in June, 1912, it appears from the record that the defendant's family still remains upon the place of the prosecutor, and his wife was, at the time of the trial, laboring in his crop. Furthermore, the prosecutor testifies that he refused to advance the defendant any more rations, because he did not believe the defendant's work would warrant him in doing so. It would seem that a laborer can not live, much less labor, without food; and we can not hold that the demands of honor are so imperative as to require the repayment of an advance (even if starvation be necessary to accomplish it), rather than that the contract be violated, if there is no other way in which the means of sustenance can be obtained than by quitting the contract. As the only construction which will uphold section 715 of the Penal Code is that which denies the statute efficacy as a mere medium for the collection of debts, we are not prepared to hold that when, as in the present case, the cropper (the title to whose entire crop is in the landlord) applied to the latter for rations and was refused, this might not be good cause for quitting the service of the master if the cropper was without food and was so situated that he could only by his labor obtain rations, either from his landlord or elsewhere. The record in the present case does not contradict the inference that the defendant may have been so situated.

*Judgment reversed.*